# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 1:23-CR-00356-002 |
| ) | |
| Plaintiff, ) | CHIEF JUDGE SARA LIOI |
| ) | |
| vs. ) | |
| ) | |
| LISA OGLETREE, ) | |
| ) | |
| Defendant. ) | |

### SENTENCING MEMORANDUM OF DEFENDANT LISA OGLETREE

Now comes Defendant Lisa Ogletree (hereinafter "Ms. Ogletree"), by and through undersigned counsel, and hereby submits the following Sentencing Memorandum in advance of her sentencing hearing, set for January 28, 2026.  On August 7, 2025, Ms. Ogletree pled guilty to one count of Conspiracy to Commit Mail and Wire Fraud, in violation of Title 18, United States Code § 1349 and § 1343.  For the reasons stated herein, Ms. Ogletree respectfully requests that this Court impose the jointly recommended 27 months of home confinement and 60 months of probation.  Such a sentence is supported by the Section 3553(a) factors, is consistent with the Guidelines, and is sufficient, but not greater than necessary to comply with the purposes of sentencing.  18 U.S.C. § 3553(a).

**I.     INTRODUCTION**

Ms. Ogletree accepts full responsibility for her conduct and is incredibly remorseful.  From the moment she became aware of the federal investigation, Ms. Ogletree has done everything asked of her by the United States.  Ms. Ogletree has likewise waived her right to a trial and pled guilty.  Ms. Ogletree has no criminal history, is a pillar in the Cleveland community, and has dedicated her life to caring for her family and other members of the community.  For these reasons, and the

28033349 v2

others outlined herein, Ms. Ogletree respectfully submits that the jointly recommended non-custodial sentence is appropriate here.

## II. FACTUAL BACKGROUND

Ms. Ogletree is a lifelong Cleveland resident and business owner. (PSR[1], p. 11-12). In 2016, Ms. Ogletree married Lonnie White, Sr. (hereinafter "Mr. White"). (*Id.* at 12). This relationship, and her trust in Mr. White, ultimately led to Ms. Ogletree's regretful situation.

More specifically, Ms. Ogletree found herself involved in an insurance fraud scheme designed and perpetuated primarily by Mr. White and his associates. (Doc. 56. Plea Agreement, Attachment A, PageID 202-203). To execute this scheme, Mr. White independently, or with his co-conspirators, purchased various properties, obtained insurance coverage for catastrophic fire damage to the properties and their contents, and subsequently destroyed the properties by fire. (*Id.* PageID 203). Mr. White would then submit insurance claims for these properties which contained false statements of facts to receive inflated insurance payments. (*Id.*). At Mr. White's instruction, Ms. Ogletree assisted Mr. White in financial transactions related to a limited number of properties.[2] (*Id.* at PageID 206). Ms. Ogletree did not know about the scheme for many years. Ms. Ogletree did not ask enough questions of Mr. White and did not prohibit him from using her bank account. As a result, Ms. Ogletree and her household benefitted financially from Mr. White's scheme. Her mistake, therefore, was not doing enough to differentiate between Mr. White's legitimate business endeavors and his ill-gotten gains. For this, Ms. Ogletree is incredibly remorseful.

---

[1] References to the PSR herein are to the Presentence Investigation Report issued on January 8, 2026.

[2] These transactions include purchasing the Nelamere Road House for $15,000 via cashier's check on or about March 2, 2017; purchasing the Coit Road House for $6,700 via cashier's check on or about April 4, 2017; purchasing the E. 188th Street House for $18,695 via wire payment from her bank account on or about April 28, 2017; and receiving $15,000 via check from White, on or about March 27, 2019, in funds derived from payments by Company-3 to White for the December 17, 2018 fire in the Sanford Ave. House. (Doc. 56: Plea Agreement, Attachment A, PageID 205).

Ms. Ogletree now understands the gravity of her decisions and deeply regrets her role in this matter. Indeed, Ms. Ogletree has agreed to pay restitution in the amount of $2,375,861 to compensate those harmed by her involvement and has participated with the government in this investigation. (*Id.*).

### III. GUIDELINE COMPUTATION

In the plea agreement, the parties agreed as follows:

| Count 1: Conspiracy to Commit Mail and Wire Fraud, 18 U.S.C. § 1349 | | |
|---|---|---|
| Base offense level | 7 | § 2B1.1(a)(1) |
| Loss greater than $550,000 ($1,381,808) | +14 | § 2B1.1(b)(1)(H) |
| Subtotal under § 2B1.1 (Cross-reference to arson guideline) | 21 | § 2K1.4(a)(4) § 2B1.1(c)(2) |
| Arson Base offense level: § 2B1.1 subtotal + 2 | 23 | § 2K1.4(a)(4) |
| Minor Role | -2 | § 3B1.2(b) |
| Total Offense Level before Acceptance of Responsibility | 21 | |

(Doc. 56: Plea Agreement, PageID 193). Thereafter, the parties agreed to a three-level reduction for acceptance of responsibility, and a two-level reduction because Ms. Ogletree is a Zero-Point Offender. (*Id.*, PageID 193-94). This results in a Total Offense Level of 16. With Offense Level 16 and Criminal History Category I, Ms. Ogletree's advisory Guideline range should be 21-27 months.

The Final Presentence Report is consistent with the Plea Agreement's calculation, with one exception. The Probation Department has determined that a two-point enhancement, per U.S.S.G. § 2B1.1(b)(16), applies. (PSR, p. 9). After acceptance of responsibility and the Zero-Point Offender reduction, the Final Presentence Report's calculations place Ms. Ogletree at Level 18, with an advisory Guidelines range of 27-33 months. Ms. Ogletree objects to the application of U.S.S.G. § 2B1.1(b)(16), as no evidence does supports that enhancement.[3]

---

[3] It bears noting that in the first draft of the Presentence Report, issued October 30, 2025 (Doc. 63), the Probation Department calculated Ms. Ogletree's guidelines differently, applying an enhancement under U.S.S.G. § 2K1.4(a)(1). That Section mandates a base offense level 24 if the offense "created a substantial risk of death or

To apply Section 2B1.1(b)(16), the evidence must support a "conscious or reckless risk of death or serious bodily injury." U.S.S.G. § 2B1.1(b)(16). Courts applying the Section 2B1.1(b)(16) enhancement require that "the government must prove not only that the fraudulent conduct created a risk of serious bodily injury, but also that *each defendant was in fact aware of and consciously or recklessly disregarded that risk.*" *United States. v. McCord, Inc.,* 143 F.3d 1095, 1098 (8th Cir. 1998) (emphasis added); *see also*, *United States v. Mohsin*, 904 F.3d 580 (7th Cir. 2018) (holding that Defendant must be "aware of, or even had reason to suspect … a risk of death or serious injury."). The record here does not come close to establishing that level of awareness or disregard.

Neither the discovery, the offense conduct listed in the Presentence Investigation Report, nor the factual basis of the plea agreement substantiate that Ms. Ogletree had any knowledge that other individuals planned or intended to set any fires. At best, the evidence supports that Ms. Ogletree furthered the conspiracy through clerical work – sending or depositing checks and sending an email on Mr. White's behalf. There is no indication that she knew of the fires beforehand or had any role in planning or executing them. Ms. Ogletree admits that her household benefitted from the proceeds of these fires, but that she learned of the fires months or years after they took place. Indeed, the United States did not seek to apply this enhancement in the plea agreement, which speaks volumes here.

The Probation Officer responds by citing the plea agreement. There, Ms. Ogletree agreed to facts indicating that, "[a]t the time of this Sanford Ave. House Fire, [Ms. Ogletree] had

---

serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly. . ." Ms. Ogletree objected to that enhancement, as the evidence does not support a finding that the risk of death or serious bodily injury was "created knowingly" by Ms. Ogletree. The calculations contained in the first draft of the Presentence Report resulted in a Total Offense Level of 17. Now, after the re-calculation in the Final Presentence Report, Ms. Ogletree faces a total offense level 18.

4

knowledge of White's continued orchestration of fraudulent claims based on fires he started, and knew that she was benefiting from the fraudulently obtained proceeds." (PSR, p. 25; *see also*, Doc. 56: Plea Agreement, PageID 207). Admitting that she was aware that proceeds coming into the home were the proceeds of a fraudulent scheme is markedly different from evidence that Ms. Ogletree knew of fires in advance, and therefore either consciously or recklessly disregarded the risks attendant thereto. The government cannot prove, and the Presentence Report does not allege, that Ms. Ogletree had any knowledge of any specific fire before it occurred. Therefore, she cannot have disregarded a risk of death or serious bodily injury – either consciously or recklessly – without such advance knowledge. As such, this Court should not apply this enhancement.

The plea agreement was negotiated earnestly by the parties. Ms. Ogletree, therefore, respectfully requests that this Court honor the joint recommendation for a non-custodial sentence outlined therein.

## IV. HISTORY AND CHARACTERISTICS OF MS. OGLETREE

Ms. Ogletree was born on May 1, 1977, in Cleveland, Ohio to Ann-Marie and Darlice Ogletree. (PSR, p. 11). Her father, Darlice Ogletree, was a retired Chief of Police who also served in the United States Navy. (*Id.*). Her mother, Ann-Marie Ogletree, is a retired school principal who resides with Ms. Ogletree in Willoughby Hills, Ohio. (*Id.*). She had a close relationship with both of her parents and members of her extended family. (*Id.*). After her parents divorced when she was four, Ms. Ogletree was raised primarily by her mother in a loving and supportive household in a middle-upper class neighborhood in Cleveland, Ohio. Despite being raised primarily by her mother, she still maintained a close relationship with her father and saw him frequently. (*Id.*).

Ms. Ogletree attended Shaw High School where she participated in the school marching band as a highlighter. (PSR, p. 13; Exhibit A: Felicia Patterson Letter). Following graduation in

1995, Ms. Ogletree continued her education at Alabama State University where she obtained her bachelor's degree in 2000. (PSR, p. 14). She then received her master's degree in 2014 from Ashland University. (*Id.*).

Throughout her life, Ms. Ogletree has made great efforts to serve as a strong support system for both her friends and family. Ms. Ogletree's commitment to her friends is well documented in the character letters submitted with this sentencing memorandum. For example, when recalling the support that Ms. Ogletree offered to her after the passing of her son, Dr. Robin R. Simmons described Ms. Ogletree as:

> not simply a friend – [but] family. She is one of those rare people whose loving heart, forgiving spirit, and unwavering loyalty remain unchanged regardless of the circumstance… Her presence was not passive – it was intentional, sacrificial, and rooted in love. She showed up in ways that can never repaid.

(Exhibit B: Dr. Robin R. Simmons Letter). "[Ms. Ogletree] extend[s] that same kindness, encouragement, and selfless support not only to [her close friends], but to countless others. Her concern for people is neither situational nor selective; it is a fundamental part of who she is." (Exhibit C: Sonjanika D. Henderson-Green Letter).

Ms. Ogletree demonstrates a similar commitment to her mother. In 2022, Ms. Ogletree became the primary caregiver for her mother, who was diagnosed with Alzheimer's. (PSR, p. 11). Since her diagnosis, Ms. Ogletree's mother's cognitive ability has declined and Ms. Ogletree is now responsible for feeding, bathing, and caring for her mother. (*Id.*). Additionally, three times a week, Ms. Ogletree takes her mother to receive medical treatments. Another close friend described that he does "not believe there is anyone else who can manage and successfully care for her mother better than [Ms. Ogletree]." (Exhibit E: Winston A. Green Letter); (Exhibit F: Courtney Bean Jones Letter) ("[Ms. Ogletree] cares for her mother with extraordinary patience, gentleness, and

6

love."). Ms. Ogletree has continued to bear this immense responsibility, despite the stress imposed by her looming sentencing.

In addition to being a caretaker for her mother, Ms. Ogletree is a "devoted and loving mother" who "is deeply involved in [the] education" of her two children, Jordan Ivey, age 19, and L.W., age 8, and her stepdaughters, J.W., age 11 and Jiyavaughna White, age 22. (Exhibit G: Karla J. Smith Letter; PSR, p, 12). Jordan currently attends University of Cincinnati but resides with Ms. Ogletree during school breaks. (PSR, p, 12). Ms. Ogletree continues to provide not only a consistent physical presence in the lives of her children, but is a stable, emotional, and financial supporter as well. Ms. Ogletree's children are each healthy, well-adjusted, and well-taken care of. (Exhibit D: Muriel Brooks Letter). Ms. Ogletree's "family depends on her emotionally and physically, and her presence is essential to their well-being." (Exhibit A: Felicia Patterson Letter).

Ms. Ogletree is also a dedicated caretaker of others in the community and a business owner. Since 1996, she has worked in early childhood development. (PSR, p. 14). In 2017, after receiving her master's degree, she purchased her mother's business, the Fundamentals Early Childhood Development Academy, a childcare and learning center offering programs for infants, toddlers, preschoolers, and school-age kids, focusing on holistic growth with play-based learning, creative arts, and a nurturing environment. (*Id.*). For nearly the last decade, Ms. Ogletree has successfully owned and operated the business. (*Id.*). Under Ms. Ogletree's leadership, Fundamentals Early Childhood Development Academy has received the highest rating in the childcare industry.[4] In her role, Ms. Ogletree has served her community, provided employment opportunities to young education students, and helped countless children by acting as a "strong advocate for children, education, and families in need." (Exhibit D: Muriel Brooks Letter). Ms. Ogletree has gone above

---

[4] The rating system has changed over the years, from numbered stars to Gold/Silver/Bronze. Under each rating system, Fundamentals has received top marks since at least 2010.

and beyond for the children she serves and "treat[s] every child with love, dignity, and respect." (*Id.*; Exhibit H: Eboni Daniels Letter).

Beyond operating Fundamentals Early Childhood Development Academy, Ms. Ogletree engages in significant charity work both independently and through her church. (Exhibit C: Sonjanika D. Henderson-Green Letter; Exhibit D: Muriel Brooks Letter; Exhibit E: Winston A. Green Letter; Exhibit F: Courtney Bean Jones Letter). Through her charitable work, Ms. Ogletree has had "a remarkable influence on youth" by "offering guidance, encouragement and a positive presence" and "striving to help them make good choices and see their own worth and potential." (Exhibit F: Courtney Bean Jones Letter).

Unfortunately, Ms. Ogletree became involved with her husband's fraudulent scheme, albeit in an incredibility limited capacity. Mr. White was the person who orchestrated and implemented the scheme, and he used Ms. Ogletree to further the conspiracy through clerical work. For example, he instructed her to send or deposit checks and send an email on his behalf, nearly all of which took place before Ms. Ogletree learned of the scheme. This boils down to Ms. Ogletree exercising poor judgment by assisting her husband with his scheme through her performance of minimal administrative work. There is no indication that Ms. Ogletree knew of any of the fires beforehand or had any role in planning or executing them. While she admits that her household financially benefited from the schemes, she only learned of the fires months or years after they took place.

Despite Ms. Ogletree's limited role in the scheme, she deeply regrets her participation. Those closest to Ms. Ogletree share this feeling: "I firmly believe [Ms. Ogletree's] actions do not define who she is at the core. She is capable of reflection, growth, and continued positive contribution to her family and community." (Exhibit A: Felicia Patterson Letter). Ms. Ogletree intends to allocute at the sentencing hearing, so that this Court can hear directly from her as she

8

takes "full responsibility [for] her conduct in this case [and is] very sorry for [her] role in this matter." (PSR, p. 9).

## V. RELEVANT SECTION 3553 FACTORS

Review of the 18 U.S.C. § 3553(a) factors weigh heavily in favor of the jointly recommended non-custodial sentence. Ms. Ogletree is a non-violent, first-time offender who does not present a safety risk to the community. She is a small business owner who has dedicated her life to taking care of the children in her community, and her family. The events leading to this unfortunate incident are totally out of character for Ms. Ogletree. She understands that she will have a criminal conviction on her record and will endure the consequences of that conviction for the rest of her life.

Ms. Ogletree followed the instructions of her husband without fully understanding the role that she was playing in his fraudulent scheme. In hindsight, Ms. Ogletree understands that the burden was on her to extricate herself from the scheme once she became aware of his fraudulent design. Ms. Ogletree is remorseful for her role in assisting Mr. White and for not taking more significant action to remove herself from the scheme.

### A. Section 3553(a)(1) – Nature and Circumstances of the Offense and History and Characteristics of the Defendant

Ms. Ogletree firmly acknowledges the seriousness of her offense and the significance of her actions. The nature and circumstances of this offense, however, are worth the Court's consideration. While Ms. Ogletree participated in the scheme by performing minimal financial transactions, the scheme was perpetrated by her husband, Mr. White, and countless others.[5] Ms.

---

[5] The discovery propounded in this case details a vast investigation conducted by the ATF. This investigation identified countless additional co-conspirators, many of whom admitted to criminal conduct, and many of whom benefitted financially from their roles in the conspiracy. Yet, only Ms. Ogletree and Mr. White have been charged in this matter.

Ogletree did not assist in lighting any of the fires nor did she submit any of the false insurance claims. In fact, Ms. Ogletree had no knowledge of the fires until months or years after they took place. Ms. Ogletree did not forecast participating in an illegal insurance scheme, but unfortunately, the relationship between Mr. White and Ms. Ogletree devolved overtime into one where misguided trust and a want to assist her partner circumvented lawful behavior and good judgment.

As discussed above, Ms. Ogletree is a hardworking and loyal daughter, mother, and business owner who is dedicated to her family and improving her community. Ms. Ogletree is gainfully employed as an entrepreneur providing holistic and comprehensive early childhood education which encourages cognitive, cultural, physical, social, emotional, and creative growth.

Outside of her employment, Ms. Ogletree is a dedicated caretaker for her children and her ailing mother. While only one of her minor children resides with her full-time, she continues to prioritize being an attentive mother to all four of her children and ensuring that they have everything that they need. In addition to taking care of her children, Ms. Ogletree is the primary provider and caretaker for her ailing mother who has limited cognitive ability due to Alzheimer's. Ms. Ogletree provides round-the-clock in-home care to her mother, in addition to ensuring that she can attend multiple weekly doctor's appointments. These factors weigh in favor of a non-custodial sentence. *See United States v. Baker*, 502 F.3d 465, 469 (6th Cir. 2007) (downward variance on sentence since the defendant was the caregiver for another family member); *United States v. Williams-Ogletree*, 752 F.3d 658, 665 (7th Cir. 2014) (giving "short shrift" to the possibility of "extraordinary hardship" on one's family is a sound basis to remand for resentencing).

    **B.**    **Section 3553(a)(2)(A) –The Seriousness of the Offense, Respect for the Law, and Just Punishment**

Ms. Ogletree recognizes that she committed acts that were in violation of the law. However, she respectfully requests that her sentence reflect the seriousness of her role within the offense,

promote respect for the law, and provide a just punishment for the offense. Ms. Ogletree is a historically law-abiding citizen, as demonstrated by her status as a zero-point offender. Ms. Ogletree played an extremely limited role in this scheme as she was not the individual to plan or promote the offense; she performed minor clerical work and was complicit after learning about the scheme.

Ms. Ogletree's respect for the law is demonstrated by her full cooperation with the United States during the pendency of the investigation and prosecution. Ms. Ogletree's lifelong commitment to following the law and her continued attempts to take responsibility for her part in the scheme demonstrate her respect for the law.

C. **Section 3553(a)(2)(B) and (C) – Deterrence and Need to Protect the Public**

As demonstrated through contents of the Presentence Investigation Report and the many character letters, Ms. Ogletree is a woman of historically good character, dedicated to her family, children, community, and business. Ms. Ogletree's cooperation with the government and lifelong compliance with the law evinces that she is a person with respect for the law and a desire to make a positive contribution to society. Given the nature of her conduct during the pendency of this matter, Ms. Ogletree has proven that she has been deterred from any additional criminal conduct. Likewise, as she played no role in the fires and is a non-violent offender, the public need not be protected from her. As a result, a custodial sentence here would not serve these purposes, and would be greater than necessary.

D. **Section 3553(a)(6) – Sentencing Disparities**

The parties jointly recommend that the Court impose a non-custodial sentence which includes 27 months of home confinement and 60 months of probation. Ms. Ogletree submits that such a sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing. Further, Ms. Ogletree submits that this sentence does not implicate concerns of a

sentencing disparity. The Final Presentence Report includes statistics about similarly situated defendants – "whose primary guideline was §2B1.1, with a Final Offense Level of 16 (plea agreement) and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure." (PSR, p. 21). There were 575 such defendants in the last five fiscal years, and only 489 of them – 85% – received a sentence of incarceration. (*Id.*). As such, 15% of similarly situated defendants were not sent to prison.

Here, the other sentencing factors strongly support that Ms. Ogletree should be part of that 15% of defendants for whom incarceration is greater than necessary. As discussed above, Ms. Ogletree had a minimal role in this fraud scheme, is a pillar in her community, runs her own business, and has multiple family members that rely on her daily. She is incredibly remorseful for her role in this scheme and has worked for the past several years to make things right. Ms. Ogletree does not require medical, substance abuse, or mental health treatment, she does not pose a danger to the community and is incredibly unlikely to re-offend. This Court should be confident that Ms. Ogletree will successfully complete a non-custodial sentence, which will allow her to care for those who need her, run her business, and get back to being the productive member of our community that she has been for nearly her entire life.

## VI.     CONCLUSION

Ms. Ogletree is genuinely remorseful for her role in the instant offense, and the impact it has had on her family and those hurt by Mr. White's fraudulent scheme. Although her professional and personal reputation is tarnished because of her actions, it is her deep desire to continue on a path of redemption and resume her work shaping the next generation and providing for her family. She is looking forward to moving forward with her life and continuing to be a positive role model for her four children and the countless children that she educates. She has taken full responsibility for her actions and is committed to continuing to live the rest of her life as a law-abiding citizen.

For the reasons set forth herein, Ms. Ogletree respectfully requests that this Court impose a non-custodial sentence, consistent with the joint recommendation, as such sentence will be sufficient, but not greater than necessary to comply with the purposes of sentencing.

Dated: January 21, 2026

                                             Respectfully submitted,

                                             /s/ *Marisa T. Darden*
                                             Marisa T. Darden (0098583)
                                             Robert J. Kolansky (0104398)
                                             BENESCH FRIEDLANDER COPLAN
                                              & ARONOFF LLP
                                             127 Public Square, Suite 4900
                                             Cleveland, OH 44114-1304
                                             mdarden@beneschlaw.com
                                             rkolansky@beneschlaw.com
                                             Telephone: 216.363.4440
                                             Facsimile:  216.363.4588
                                             *Attorneys for Defendant,*
                                             *Lisa Ogletree*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 21, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system on this 21st day of January 2026.

/s/ *Marisa T. Darden*
Marisa T. Darden (0098583)
*One of the Attorneys for Defendant,*
*Lisa Ogletree*